IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JATARI SETTLES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 3:20-cv-00084 |
| | ) |
| TRANS UNION, LLC and | ) JUDGE CAMPBELL |
| PENNSYLVANIA HIGHER | ) MAGISTRATE JUDGE NEWBERN |
| EDUCATION ASSISTANCE AGENCY | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM

Pending before the Court are motions to dismiss the First Second Amended Complaint (Doc. No. 72) filed separately by defendants Pennsylvania Higher Education Assistance Agency and Trans Union, LLC. (Doc. Nos. 74 and 81). Plaintiff responded to the motions (Doc. Nos. 110 and 130) and Defendants replied. (Doc. Nos. and 118 and 131). For the reasons stated below, the motions to dismiss will be **GRANTED**.

## I. BACKGROUND

Plaintiff brings this action for violation of the Fair Credit Reporting Act ("FRCA"), 15 U.S.C. § 1681 *et seq*., against Pennsylvania Higher Education Assistance Agency ("PHEAA"), a student loan servicer, and Trans Union, LLC, a credit reporting agency. (Am. Compl., Doc. No. 72). This case arises out of the credit reporting of one of Plaintiff's student loans. Plaintiff defaulted on the loan in February 2014. (*Id*., ¶ 9). PHEAA then closed the account, transferred the loan, and submitted an insurance claim to the government for the defaulted loan. (*Id*.).

The loan is reported as follows: [1]

```
FEDLOAN SERVICING #809525947FD0**** ( POB 60610, HARRISBURG, PA 17106, (800) 699-2908 )
We investigated the information you disputed and the disputed information was VERIFIED AS ACCURATE;
however, we updated: Rating. Here is how this account appears on your credit report following our
investigation.
Date Opened:       12/24/2012            Balance:        $0              Pay Status:  >Account 120 Days Past
Responsibility:    Individual Account    Date Updated:   02/10/2014                    Due Date<
Account Type:      Installment Account   High Balance:   $66,630         Terms:       Monthly for 360 months
Loan Type:         STUDENT LOAN                                          Date Closed: 02/10/2014
                                                                         >Maximum Delinquency of 120 days in
                                                                          06/2013 and in 02/2014<

Remarks: DISP INVG COMP-CONSUM DISAGRS; ACCT CLOSED DUE TO TRANSFER; TRANSFERRED TO ANOTHER OFFICE
Estimated month and year that this item will be removed: 01/2020
          01/2014  12/2013  11/2013  10/2013  09/2013  08/2013  07/2013  06/2013  05/2013  04/2013  03/2013  02/2013
Rating    [120]    [120]    [120]    [120]    [120]    [120]    [120]    [120]    [90]     [OK]     [OK]     [OK]
          01/2013
Rating    [X]
```

(Compl., Doc. No. 1, Ex. B).

On August 27, 2018, Plaintiff sent a letter to Trans Union disputing the reporting of his account status. (*Id*., ¶ 12; Doc. No. 110-5). Plaintiff contested the listing of the account status as "120 days past due" and argued that if the balance is $0, it is "impossible for their current status to be listed as late." (Doc. No. 110-5). On October 4, 2018, Trans Union responded that its investigation showed the account was reported accurately. (*Id*., ¶ 16).

Plaintiff filed this case claiming Defendants' inaccurate reporting and failure to conduct a good faith investigation of his dispute violates the FCRA. (Doc. No. 72, ¶¶ 32, 38). Plaintiff claims the reported pay status as "Account 120 Days Past Due Date" is "inaccurate on its face" and "misleading to the point that it is no longer accurate." (Doc. No. 72, ¶¶ 8, 18). He contends the pay status should either be deleted or corrected to "current" or "paid as agreed." (*Id*., ¶ 8).

Plaintiff asserts that if Trans Union had reasonable procedures, it "would not allow an account to report as though the account is past due, with a '$0' balance, after the account was paid

---

[1] PHEAA does business under the name "Fedloan Servicing." (Doc. No. 72, ¶ 6). The document containing the results of PHEAA's investigation is not attached to the Amended Complaint (Doc. No. 72). However, Plaintiff did attach this document to the original complaint (Doc. No. 1), and because it is referenced in and central to the claims in this case, the Court deems the document proper for consideration. *See Bassett v. National Collegiate Athletic Assn*., 528 F.3d 426, 430 (6th Cir. 2008).

2

off and brought current." (*Id*., ¶ 40). He reasons, "[t]he fact that Trans Union is currently reporting inaccurate information on Plaintiff's credit profiles/credit reports … is proof that Trans Union did not conduct a reasonable investigation. … If Trans Union had conducted this proper investigation they would have corrected or deleted the Plaintiff's account details that are inaccurate or misleading." (*Id*., ¶ 37). Plaintiff makes similar allegations against PHEAA, claiming that PHEAA "should have discovered that the information they were reporting to the Credit Reporting Agencies was not accurate." (*Id*., ¶ 40).

Defendants Trans Union and PHEAA each moved to dismiss the claims against them on grounds that the disputed information was accurate and not materially misleading. (Doc. Nos. 74 and 81).

## II. STANDARD OF REVIEW

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.[2] *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be

---

[2] Plaintiff erroneously cites the standard from *Conley v. Gibson*, 355 U.S. 41, 45 (1957), which was abrogated by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (noting that the "no set of facts" language in *Conley* had "earned its retirement"). Though he is represented by counsel, Plaintiff also inexplicably cites (twice) the "less stringent" standard applicable to *pro se* litigants, which is plainly not applicable here. (*See* Doc. No. 130 at 2-3).

3

accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*. at 678; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. Identifying and setting aside such allegations is crucial, because they simply do not count toward the plaintiff's goal of showing plausibility of entitlement to relief. As suggested above, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id*. at 681. The question is whether the remaining allegations – factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed under Rule 12(b)(6). *Id*. at 683.

In considering a Rule 12(b)(6) motion, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to Defendant's motion to dismiss provided they are referred to in the Complaint and are central to the claims. *Bassett v. National Collegiate Athletic Assn*., 528 F.3d 426, 430 (6th Cir. 2008). The following documents are referred to in the Complaint and central to Plaintiff's claims, and, therefore, will be considered by the Court: Plaintiff's credit report issued by Trans Union and the results of the investigation issued by Trans Union.

4

The parties filed a trove of other documents that are either not referred to in the Complaint or are not central to the claims therein. These filings have not been considered by the Court. For clarity, the documents not considered include the following: Declaration of Leslie Harris (Doc. No. 75-1); select portions of the 2018 Credit Reporting Resource Guide (*id.*); Equifax investigation report (Doc. No. 84-2)[3]; the amended complaint, jury charge, jury verdict form, and what appears to be evidence from the case *Macik v. JPMorgan Chase Bank et al.*, Case No. 3:14-cv-44 (S.D. Tex. Jul 7, 2014) (filed here at Doc. Nos. 110-1, 110-2, 110-3)[4]; letter from U.S. Customs and Border Patrol to Robert M. Settles (Doc. No. 110-4); and affidavit of Robert Settles (*id.*).[5]

### III. ANALYSIS

The FCRA exists "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Boggio v. USAA Fed. Savings Bank*, 696 F.3d 611, 614 (6th Cir. 2012) (quoting *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA imposes obligation on furnishers of information to provide credit reporting agencies with accurate information about consumers, 15 U.S.C. § 1681s-2(a), and to respond to disputes about the consumer information provided, 15 U.S.C. §1681s-2(b). Consumers have a private right of action under §1681s-2(b) if the furnisher "provides 'incomplete or inaccurate' information to a [credit reporting agency] and then refuses to 'delete' or 'modify' that information in response to a consumer complaint." *Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938 (6th Cir. 2020) (citing 15 U.S.C. § 1681s-2(b)(1)).

---

[3] The investigation report by Equifax is referred to in the Complaint but is not central to the claims and has not been considered.

[4] The Court's considered the *Macik* case in accordance with the standard articulated in the Court's Nov. 5, 2020 Order (Doc. No. 129) denying the motion for judicial notice.

[5] These documents do not concern parties to this case and are wholly irrelevant to the claims before this Court.

5

The FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy about whom the report relates," and to conduct a "good faith investigation into a consumer's notice of dispute," 15 U.S.C. §§ 1681e(b) and 1681i(a).

An essential element of a claim under the FCRA is a showing that the information in a credit report is inaccurate. *See Cohen v. Trans Union Corp.*, 67 F. App'x 325, 327 (6th Cir. 2003); *Dickens v. Trans Union Corp.*, 18 F. App'x 315, 317 (6th Cir. 2001). The Sixth Circuit has held that inaccurate information includes both technically inaccurate information and information that is materially misleading. *See Twumasi-Ankrah*, 954 F.3d at 942. With regard to claims against the credit reporting agencies, "a plaintiff may allege that a [credit reporting agency] reported either 'patently incorrect' information about them *or* information that was 'misleading in such a way and to such an extent that it [could have been] expected to have an adverse effect [on the consumer]." *Id*. (articulating standard for inaccuracy under § 1681e(b)) (quoting *Dalton v. Capital Associated. Indus., Inc*., 257 F.3d 409, 415 (4th Cir. 2001)). Claims against entities that furnish raw data are held to the same standard. *Id*. at 943. "Incomplete or inaccurate" information under § 1681s-2(b) encompasses "not only 'false information,' but also 'correct information' that nevertheless 'create[s] a materially misleading impression.'"[6] *Id*. (citing *Boggio*, 696 F.3d at 617).

Defendants argue that Plaintiff has not pleaded facts to establish the threshold element of his claims – that the information reported was inaccurate or materially misleading particularly in light of Plaintiff's admission that he defaulted on the loan. Defendants argue that the reported "account status" as "120 days past due" could not reasonable mislead creditors into believing that

---

[6] Though the Sixth Circuit has, at times, used slightly varying language to define "inaccuracy" in the context of FCRA claims. It appears to intend that courts apply the same standard to claims against credit reporting agencies as to those against furnishers of raw data. *Twumasi-Ankrah*, 954 F.3d at 942-43 (stating the intent to "avoid needless asymmetry" between the two provisions and coalesce around a single definition of inaccuracy that includes "materially misleading" information).

6

Case 3:20-cv-00084 Document 132 Filed 11/24/20 Page 6 of 10 PageID #: 1208

the account is currently past due in the context of the other information given about the account – that it was closed in February 2014 and has a zero-dollar balance. Defendants state that the "pay status" accurately reflects that Plaintiff was more than 120 days behind in his loan obligations at that time.

Plaintiff contends that the report is misleading and "patently inaccurate on its face" because the loan has a zero-dollar balance yet states that the account pay status is "120 Days Past Due Date." Plaintiff claims the "pay status" refers to the "current status" of the account and is therefore inaccurate because the loan payments are not currently past due as evidenced by the zero-dollar balance, and he has no further payment obligations.

In evaluating whether reported account information is materially misleading, courts assess the alleged inaccuracy in the context of the report as a whole. *See Thomas v. Equifax Info. Servs., LLC*, No. 3:19-cv-286, 2020 WL 1987949, at *4 (S.D. Ohio Apr. 27, 2020) (finding no reasonable person would be misled into believing the plaintiff had current payment obligations when the account was listed as closed with a zero-dollar balance); *Her v. Equifax Info. Servs*., LLC, No. 1:18-cv-05182, 2019 WL 4295280, at *6 (N.D. Ga., Jul. 12, 2019); *Alston v. Equifax Info. Servs., LLC*, No. TDC-13-1230, 2014 WL 6388169 (D. Md. Nov. 13, 2014).

The Court finds that the reported information, taken as a whole, is neither inaccurate nor materially misleading. The report provides payment history showing that Plaintiff was at least 120 days late each month from May 2013 to January 2014, states that the account was closed in February 2014, and does not provide any account payment information past that date. Plaintiff admits that never brought the account current – instead, he defaulted, and the account was closed while it was more than 120 days past due. Reporting a "pay status" as "120 days past due date" in these circumstances would not reasonably mislead a creditor to believe Plaintiff is currently past

7

due on this loan. Moreover, the fact that the lender was reimbursed via government insurance has no bearing on the reporting of Plaintiff's payment history. In fact, reporting a pay status of "current" or "paid as agreed" as advocated by Plaintiff could imply that Plaintiff fulfilled his loan obligations by paying the loan in full when he actually defaulted.

Many courts have found that reporting historical account data is neither inaccurate nor misleading. *See e.g., Jones v. Equifax Info. Servs., LLC*, No. 2:18-cv-2814, 2019 WL 5872516 (M.D. Tenn. Aug. 8, 2019) (finding that a credit report showing a monthly payment obligation when the account was closed and had a zero-dollar balance was not materially misleading because "a reasonable prospective lender would understand [that] the report showed a past obligation only"); *Thomas*, 2020 WL 1987949 (finding no reasonable person would be misled into believing that [plaintiff] had any ongoing monthly obligation on this installment loan" when the account was reported closed with a zero-dollar balance); *Euring v. Equifax Information Servs., LLC*, No. 19-cv-11675, 2020 WL 1508344 (E.D. Mich. Mar. 30, 2020) (finding nothing false or materially misleading about the "monthly payment" information on plaintiff's credit reports in light of the other information that appears on those reports).

Plaintiff's relies heavily on *Macik v. JP Morgan Chase Bank, N.A.*, No. 3:14-cv-0044, 2015 WL 12999728 (S.D. Tex. May 28, 2015), report and recommendation adopted, 2015 WL 12999727 (S.D. Tex. Jul. 31, 2015). This reliance is misplaced. In *Macik*, the plaintiff fell behind on her mortgage payments, but then sold the house and paid the loan in full. *Id.*, at *1. Years later, although she had paid off the loan, the credit reporting agency continued to report the pay status as 90 days past due. *Id*. The *Macik* court denied the defendants motion for summary judgment finding questions of fact regarding, among other things, the accuracy of continuing to report the account status as 90 days past due. *Id.*, at *4.

8

Unlike the circumstances in this case, the *Macik* plaintiff paid the loan in full before the account was closed. Accordingly, a report that was misleading in *Macik*, is not necessarily misleading here where Plaintiff did not pay his loan in full – he defaulted. In both cases the reported loan balance is zero-dollars. In both cases, the loan account was closed. However, the difference between a loan paid in full by the borrow and one in default is not insignificant. Though Plaintiff argues otherwise, the fact that his account was paid via a government insurance policy after he defaulted on the loan, does not equate his zero-balance to the *Macik* plaintiff's zero-balance.

Plaintiff also cites *Friedman v. CitiMortgage, Inc*., No. 18-cv-11173, 2019 WL 4194350 (S.D.N.Y. Sept. 3, 2019), which the court found to have stated a claim under the FCRA. Like *Macik*, *Friedman* does not involve a defaulted loan account. In *Friedman*, the plaintiff's mortgage account with Citibank was transferred to another lender and he had no further payment obligations to Citibank. Nevertheless, his credit report continued to report the Citibank account as 120 days late with a monthly payment amount of $360. Friedman argued that the reporting made it look like his monthly obligations were greater than they actually were and that he was currently late on payments. The ruling in *Friedman* is of limited relevance here. Unlike the plaintiff in *Friedman*, here Plaintiff defaulted on his loan and the information provided regarding his account states that his account is closed and does not indicate any monthly payment amount.

Plaintiff's reliance on a one-line order denying a motion to dismiss in *Zimerman v. Pa. Higher Educ. Assistance Ass'n*, No. 20-cv-00680 E.D.N.Y. Sept. 4, 2020), is of no persuasive value.

Considering the totality of the information reported, the Court finds that the report is neither inaccurate nor materially misleading. Plaintiff does not allege that any creditor was misled by the

9

information reported and the Court finds it implausible that a creditor would be misled into believing Plaintiff is currently 120 days past due on his payment obligation each month when the reporting of the account states that the account was closed in February 2014 and has a zero-dollar balance. As stated above, to establish any FCRA violation Plaintiff must show that the credit report is patently incorrect or materially misleading. Because he cannot do so, the claims in this case will be **DISMISSED**.

In addition, because the court finds amendment of the complaint cannot change the fact that the credit report at issue does not contain inaccuracies – it is neither patently incorrect nor materially misleading – the claims will be **DISMISSED WITH PREJUDICE**. *See Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005) (leave to amend is properly denied when amendment would be futile).

## IV. CONCLUSION

For the reasons stated, PHEAA's Motion to Dismiss (Doc. No. 74) is **GRANTED** and Trans Union's Motion to Dismiss (Doc. No. 81) is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE